IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

PATRICIA R. ENDICOTT,         )
         )
      Plaintiff,        )   TC-MD 200296G
         )
   v.         )
         )
DEPARTMENT OF REVENUE,    )
State of Oregon,        )
         )
      Defendant.     )   **DECISION**

Plaintiff challenges Defendant's adjustment of her 2017 filing status from head of household to married filing separately, as well has her Working Family Household and Dependent Care (WFHDC) credit. Plaintiff appeared and testified on her own behalf at trial, and her former husband, Bruce Endicott, also testified. Auditor Nelly Rudnitskaya represented Defendant and testified. Plaintiff's Exhibits 1 to 9 and Defendant's Exhibits A to G were admitted.

## I. STATEMENT OF FACTS

At the outset of 2017, Plaintiff and Mr. Endicott lived with their two young children at their marital address in Redmond. They remained married throughout the year, but the extent to which they continued to live together is disputed. According to their testimony, they separated in April and for the remainder of the year he lived in their jointly owned travel trailer while Plaintiff continued to live in their jointly owned marital home. (Ex G at 23.) Their children attended day care from January to July, and again from October to December.

In her written objection to Defendant's Notice of Deficiency, submitted July 1, 2019, Plaintiff wrote:

"[Y]our letter indicates that my husband and I lived together ALL of 2017 so you adjusted my filing. I am not sure where you received this information however, that is NOT TRUE. My husband and I lived apart for more than 7 months of 2017 as we

were considering divorce. This is why I wasn't sure if he was employed all or part of 2017. *From April 8th, 2017 to November 25th, 2017 my husband and I were NOT living together* which is why I filed my taxes how I did."

(Ex E at 3 (emphasis added).) At trial, Plaintiff testified that the emphasized portion of her written objection referred to an attempted reconciliation with Mr. Endicott near Thanksgiving. She testified that he did not move any things in and did not pay any bills, and that she could not recall that he lived at the house for the last two months of 2017.

A July email from Plaintiff to her lawyer relates an interaction she had with Mr. Endicott "first thing this morning as I was walking out the door." (Ex 9 at 3.) According to the email, he had been seeking her signature on documents for a home loan, and she had been seeking a notarized letter confirming that he was "allowing [her] to leave the state with the girls to move to San Diego." (*Id.*) In November 2017, Plaintiff and Mr. Endicott jointly signed for a second mortgage on the marital home; the mortgage document recited that the property being encumbered was the borrowers' residence. (Ex G at 3, 8–9.) They signed a similar mortgage document, with a similar recital, in January 2018. (*Id.* at 10–16.)

Mr. Endicott testified that he moved frequently in 2017 and used the address of the marital home as his mailing address. As of the date of trial, he still used that address for his vehicle registrations and his driver's license. His checks written for child care displayed two different addresses: the marital address in January, May, June, and July, and another address in Redmond from February to April. (Ex C at 68–76.) The marital address is provided on a contract with a child care provider Plaintiff and Mr. Endicott signed in October, with a separate blank for Mr. Endicott's "home address (if different)" left uncompleted. (Ex C at 14–19.)

Additional evidence was received regarding Plaintiff's income and expenses in 2017. Because the court's decision rests on the composition of her household, that evidence need not be recited here.

Plaintiff reported a filing status of head of household on her 2017 return and claimed a WFHDC credit of $8,885 based on child care payments of $11,847. (Ex A at 1, 3–4.) Defendant adjusted her filing status to married filing separately, thereby reducing her standard deduction and disallowing her claimed Oregon earned income credit. (Ex D at 5–10.) Defendant also disallowed her claimed WFHDC credit. (*Id*.)

On appeal, Plaintiff asks the court to reinstate her head of household filing status and WFHDC credit. Defendant asks the court to uphold its adjustments.

## II. ANALYSIS

The two legal questions in this case are whether Plaintiff qualified for a filing status of head of household, as opposed to married filing separately, and whether Plaintiff qualified to claim the WFHDC credit. Both questions depend on whether Plaintiff and Mr. Endicott lived in the same household at the end of 2017. On that factual question, Plaintiff must bear the burden of proof by a preponderance of the evidence. *See* ORS 305.427.[1]

Head of household filing status under the Internal Revenue Code (IRC) affects a taxpayer's Oregon standard deduction and eligibility for Oregon's earned income credit. ORS 316.695(1)(c) grants heads of households a higher standard deduction than married taxpayers filing separately, relying on the definition of "head of household" found in IRC section 2. ORS 316.695.(1)(c)(E). Oregon's earned income credit is available only to those qualifying for the federal earned income credit, which excludes married taxpayers filing separately unless they meet the same criteria that would allow them claim head of household status. ORS 315.266(1); *see* IRC §§ 32(d); 2(c).

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

The head of household filing status is generally available to unmarried persons who pay over half the cost of maintaining either their own home (shared with their children or other dependents) or their dependent parents' home. IRC § 2(b)(1). Married taxpayers who are legally separated under a decree of divorce or separate maintenance, or whose spouse is a nonresident alien, may be treated as unmarried and therefore eligible for head of household status. IRC § 2(b)(2). In addition—and importantly for this case—married taxpayers maintaining a home with their children may be treated as unmarried if their spouses are not part of the household for the last six months of the year. IRC §§ 2(c); 7703(b).

The requirement that married taxpayers must have lived apart from their spouses the last six months of the year to be considered unmarried is strict. *Becker v. Comm'r*, 69 TCM (CCH) 2439 (1995) (holding six-month condition unmet where husband lived in wife's house until July after being asked to leave in May). Courts do not "explore the quality of a marriage or membership in a household when the parties live under one roof." *Id*.

The eligibility criteria for Oregon's WFHDC credit are broader than those for head of household status, but still require married taxpayers filing separately to either be legally separated or to "reside in separate households on the last day of the tax year with the intent of remaining in separate households in the future." ORS 315.262(6)(d).

In this case, the balance of the evidence does not show that Plaintiff and Mr. Endicott lived apart in December 2017. To the contrary, the mortgage documents they signed in November 2017 and January 2018 attest to their sharing a residence, implying they lived together throughout December. The other contemporary document in evidence is the October contract with the child care provider, in which Plaintiff and Mr. Endicott provided a single address. The only documents in evidence showing a different address for Mr. Endicott in 2017

are his checks from February to April, which do not align with any explanation of his and Plaintiff's living situation described at trial.

Plaintiff's statements about her household composition are conflicting. She testified that she did not recall living with Mr. Endicott the last two months of 2017. However, she had earlier stated in her written objection that she and Mr. Endicott had been separated "more than seven months," from a specific date in April to a specific date in November. That statement is naturally read to imply they were no longer separated in December 2017.

Plaintiff must bear the burden of proof. *See* ORS 305.427. She and Mr. Endicott were apparently undergoing serious marital difficulties in 2017 and may well have separated over the summer. However, the evidence does not show that they remained separated for all of the last six months of the year. *See* IRC §§ 2(c); 7703(b)(3); *Becker*, 69 TCM (CCH) 2439. Nor does it show that they lived apart on December 31, 2017. *See* ORS 315.262(6)(d). Without such evidence, the court cannot order Defendant to reverse its adjustment to Plaintiff's filing status or its denial of her claimed WFHDC credit.

## III. CONCLUSION

Plaintiff has not borne her burden of proving that she and Mr. Endicott resided in separate households at the end of 2017. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this _____ day of March 2021.

_____
 POUL F. LUNDGREN
 MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Magistrate Poul F. Lundgren and entered on March 10, 2021.*